**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

_____

**TRINA BALDWIN**,

           Plaintiff,

v.                                                 No. CIV 08-149 BB/WPL

**HOBBS MUNICIPAL SCHOOLS, ET AL.,**

           Defendants.

## MEMORANDUM OPINION

Defendants filed an earlier motion to dismiss Plaintiff's original complaint. [Doc. 5] Following a hearing on that motion, rather than granting the motion to dismiss, the Court allowed Plaintiff an opportunity to file an amended complaint addressing the deficiencies identified in that original complaint. This matter therefore comes before the Court for consideration of Defendants' motion to dismiss [Doc. 42] Plaintiff's amended complaint [Doc. 40]. As discussed below, the amended complaint contains many of the same problems as the original complaint, and as a result fails to state a viable claim against any Defendant. For that reason, Defendants' motion to dismiss will be granted.

**Background**

Plaintiff has been employed as a teacher by Defendant Hobbs Municipal Schools since 1992. Plaintiff has filed several administrative charges of discrimination or retaliation with either the federal Equal Employment Opportunities Commission ("EEOC") or the New Mexico Human Rights Division ("HRD") during her tenure with Hobbs Schools, including at minimum charges filed in 1996, 1997, 2000, 2003, 2006, and 2008. Just prior to the last charge, Plaintiff filed a state-court lawsuit addressing her claims of discrimination and retaliation. Defendants removed that lawsuit to this Court, and filed a motion to dismiss. As noted above, this Court ordered Plaintiff to file an

amended complaint in order to avoid dismissal, and Plaintiff has done so.  The amended complaint raises claims of discrimination and retaliation under both the New Mexico Human Rights Act and Title VII of the federal Civil Rights Act; discrimination under the Fourteenth Amendment and Section 1983; breach of contract and breach of the implied covenant of good faith and fair dealing under state law; and intentional infliction of emotional distress, also under state law.  Defendants have renewed their  motion to dismiss, this time directing the motion at Plaintiff's amended complaint.  The individual Defendants maintain they are entitled to qualified immunity with respect to the constitutional claims, and all Defendants maintain the amended complaint fails to state any viable cause of action.  In addition, Defendants contend Plaintiffs have failed to exhaust their administrative remedies with respect to certain of their claims.

### Standard of Review and Materials Considered

In deciding a motion to dismiss, the Court must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff.  *See Pace v. Swerdlow*, 519 F.3d 1067, 1073 (10th Cir. 2008).  The Court looks to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief.  *See id.*  A plaintiff does not have to provide detailed facts but the complaint must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  The court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007).

Generally, a district court may not consider any materials other than the allegations of the complaint in deciding a motion to dismiss; if the court does consider matters outside the pleadings, the motion to dismiss must be converted into a motion for summary judgment.  *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253 (10th Cir. 2005).  In such a circumstance, the court must provide the parties with notice so that each party has an opportunity to submit evidence concerning the issue.  *See Burnham v. Humphrey Hospitality Reit Trust, Inc.*, 403 F.3d 709, 713

(10th Cir. 2005).  In this case, for example, Defendants have submitted certain materials for the Court's consideration, such as an affidavit and other documents attached to one of the briefs.  The Court has not considered the contents of these materials in deciding the merits of the motion to dismiss.  Therefore, it is not necessary to convert the motion to a motion for summary judgment with respect to the merits.  On the other hand, Defendants have also raised a jurisdictional issue, claiming Plaintiff has failed to exhaust her administrative remedies with respect to certain of her claims. Defendants have submitted exhibits concerning that argument, and Plaintiff has responded with exhibits of her own.  Since the Court is required to satisfy itself that it has jurisdiction before addressing the merits of a claim, the Court has considered both sides' exhibits insofar as they pertain to the exhaustion-of-remedies question.  In that respect only, the motion to dismiss has been partially converted to a motion for summary judgment.

**Discussion**

    **A.  Section 1983 Claims**

Plaintiff maintains that Defendants have violated her constitutional right to equal protection of the laws by discriminating against her on the basis of her race.  There are a few principles that must be kept in mind in analyzing this claim.  First, liability under § 1983 is dependent on a finding of individual liability against one of the three remaining individual Defendants.[1]  In other words, if Plaintiff has not adequately pled an equal-protection claim against at least one individual Defendant, this claim must be dismissed.  *See, e.g., Trigalet v. City of Tulsa*, 239 F.3d 1150, 1154-56 (10th Cir. 2001) ( § 1983 requires a predicate constitutional violation by an individual defendant to support municipal liability).  Second, in the employment context, a plaintiff must plead an adverse employment action in order to state an equal-protection claim.  It is not enough to allege merely that Plaintiff was treated differently than other employees; instead, that different treatment must rise to

---

[1]Following Plaintiff's voluntary dismissals of several defendants from this action, the remaining individual Defendants are Defendants Green, Burch, and Black.

the level of an adverse employment action to support a § 1983 claim.  *See Carney v. City and County of Denver*, 534 F.3d 1269, 1273 (10th Cir. 2008) (elements of plaintiff's case in a racial discrimination lawsuit are the same whether the claim is brought under Title VII or § 1983; those elements include existence of an adverse employment action).  Finally, since § 1983 is based on individual liability and Defendants have asserted they are entitled to qualified immunity, it is imperative that Plaintiff's complaint assert specific, nonconclusory factual allegations concerning a specific Defendant to remain viable.  *See Robbins v. Oklahoma*, 519 F.3d 1242, 1249 n. 2 (10th Cir. 2008).  It is "particularly important ... that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her..."  *Id.* at 1250.

Plaintiff's complaint falls short of alleging an actionable § 1983 claim for at least two reasons.  Rather than specifying actions each individual Defendant took, the complaint for the most part makes allegations in the aggregate, accusing "Defendants" collectively of doing various things.  Under *Robbins*, this is insufficient to allege that a particular Defendant has performed a particular act.  *Id.*, 519 F.3d at 1250 (where complaint alleged "Defendants" took certain actions, the complaint failed to provide adequate notice to the individual defendants as to the nature of the claims brought against each defendant).  Plaintiff's complaint in this case alleges that, as just a few examples: "Defendants" ordered other employees not to speak to Plaintiff because she is African-American; "Defendants" allowed parents who had "deep-rooted racial animus" to "observe and micro-manage" Plaintiff's duties in the classroom; "Defendants" repeatedly violated the "health plan" of Plaintiff's son, by exposing him to peanuts; "Defendants" did not adequately investigate Plaintiff's many complaints of discrimination; and "Defendants" terminated the only other African-American employee working at Plaintiff's school at some unspecified time.  These general allegations of collective conduct are simply insufficient to allege that any individual Defendant took any of these alleged actions.  *Id.*; *see also Ashcroft v. Iqbal, supra*, 129 S.Ct. at 1951.

The only allegations in the complaint that are specific to the remaining individual Defendants are the following: (1) Defendant Green was hired as principal in 2004, and continued the pattern of discrimination against Plaintiff that she had suffered before he was hired; he also continued to ignore Plaintiff's son's health plan; (2) Defendant Green did not investigate or take any action even though employees and parents continued to harass Plaintiff based on her race; (3) Defendant Green allowed one parent, Ms. Clack, to remain on school grounds and work as a volunteer in the office even though Ms. Clack threatened Plaintiff in the hallway; (4) other parents reported to school administrators that Ms. Clack was harassing Plaintiff, but Defendant Green took no action; (5) on April 22, 2005, Defendant Green did enter into a memorandum of understanding with Ms. Clack indicating she had to end all negativity, gossip, and antagonizing antics; (6) on May 27, 2005, Plaintiff received a note in her school mailbox, from an unidentified person, stating in part, "Nuts not niggers", and with peanut products attached; Defendant Green did not report this to law enforcement authorities, failed to investigate to determine who might have put the note in Plaintiff's box, did not admonish staff members, and took no remedial action "against other references to peanuts"; (7) in the summer of 2005, Plaintiff met with Defendant Burch and complained of racism and retaliation; Burch promised to do something about the issues, but did not; and (8) Defendant Black intentionally violated the medical plan of Plaintiff's son.  As discussed below, these allegations are not sufficient to state an equal-protection claim against any of the individual Defendants.[2]

---

[2]Plaintiff's counsel did attempt to make more specific allegations during briefing of the motion to dismiss.  Counsel attributed certain actions contained in the complaint to a specific Defendant.  However, a brief cannot be used to supplement a complaint and add allegations that were not made in the complaint.  *See, e.g., Moya v. Schollenbarger*, 465 F.3d 444, 458 n. 16 (10th Cir. 2006) (allegation made in brief on appeal, but not in complaint, would not be considered; both district court and appellate court are limited to four corners of complaint in assessing a motion to dismiss).

With respect to Defendants Black and Burch, the complaint alleges only one specific action for each Defendant: Burch failed to respond after Plaintiff met with him to complain about racism, and Black intentionally violated Plaintiff's son's medical plan.[3]  Neither of these actions, or failures to act, rises to the level of an adverse employment action that could support an equal-protection claim.  An adverse employment action is one that constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.  *See Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1222 (10th Cir. 2006).  Actions such as issuing a negative evaluation that does not have concrete consequences, or placing an employee on a performance improvement plan, are not actionable as an equal-protection claim. *See, e.g., id.* at 1224 (placement on a performance improvement plan, standing alone, is not an adverse employment action).

In particular, "failing to respond to an employee's complaints to that employee's satisfaction" is not an adverse employment action.  *See Moya v. Schollenbarger*, *supra*, 465 F.3d at 457.  That is what Defendant Burch allegedly did – on one occasion, following a complaint from Plaintiff about racism and retaliation, he failed to take any action.  This allegation is simply not enough to give rise to liability under § 1983.[4]  Similarly, Defendant Black's one alleged transgression – somehow intentionally violating Plaintiff's son's medical plan – is too vague, too unrelated to Plaintiff's employment, and too devoid of concrete consequences to be considered an

---

[3]The complaint does not explain how Defendant Black violated the plan.  There is a subsequent allegation to the effect that the son's teacher held a school classroom project with peanuts, and sent peanut candies home with each student.  It may be, therefore, that Defendant Black was this teacher.  However, the complaint does not identify the teacher in question.

[4]The Court understands that Plaintiff would like to attribute more instances of action and inaction to Defendant Burch; however, as discussed above, the amended complaint does not specifically do so, even after the Court pointed out this deficiency at the hearing held on the motion to dismiss the original complaint.

adverse employment action.[5]  Plaintiff's § 1983 claims against both of these Defendants will therefore be dismissed.

The situation with respect to Defendant Green is somewhat more complicated, because as listed above the complaint contains a few more allegations of specific conduct on his part.  However, those allegations are either too vague and conclusory to be considered, or have no relation to race, or both. Defendant Green allegedly continued to discriminate against Plaintiff and continued to ignore her son's health plan; did not investigate or take any action even though employees and parents continued to harass Plaintiff based on her race; allowed one parent, Ms. Clack, to remain on school grounds as a volunteer in the office even though she had threatened Plaintiff and other parents had reported that Ms. Clack was harassing Plaintiff; and failed to adequately respond to the racist note that had been placed in Plaintiff's school mailbox.  The first two allegations are purely conclusory; it is not sufficient to allege generally that a defendant discriminated against Plaintiff, or that parents harassed Plaintiff "based on her race."  *See Iqbal, supra,* 129 S.Ct. at 1952; *Jordan v. Alternative Resources Corp.*, 458 F.3d 332, 345 (4th Cir. 2006) (conclusory allegations of discriminatory intent, not supported by factual allegations in the complaint, failed to state race-discrimination claim); *see also Moya, supra*, 465 F.3d at 457 (general assertions that plaintiff was exposed to a hostile work environment insufficient to survive motion to dismiss).  Instead, specific facts must be alleged to support the conclusory assertions.

As for the allegations concerning Defendant Green's failure to control Ms. Clack, there is no factual allegation in the complaint indicating that Ms. Clack's harassment of Plaintiff was based

---

[5]The Court's research has uncovered another reason why Defendant Black should not be liable to Plaintiff under § 1983.  There is Tenth Circuit authority indicating that generally, a co-employee who has no supervisory authority over a plaintiff does not act under color of state law when he or she harasses the plaintiff.  *See, e.g., David v. City and County of Denver*, 101 F.3d 1344, 1354 (10th Cir. 1996).  The complaint contains no allegation that Defendant Black was a supervisor or in a supervisory position such as principal or superintendent.  Since neither party has briefed this issue, however, the Court does not rest its decision on this theory.

on Plaintiff's race.  Again, the only such allegations are completely conclusory: the complaint alleges that Ms. Clack had "deep rooted racial animus" and alleges that "Defendants" had actual knowledge of Ms. Clack, who "clearly possessed racial sentiments toward Plaintiff."  The complaint does allege specific instances of Ms. Clack's harassing conduct; she allegedly offered to fight Plaintiff in the hallway, accosted Plaintiff at a business establishment, taunted her son about his allergy to peanuts, used curse words in the school office when discussing Plaintiff, and was admonished by Defendant Green for her negativity, gossip, and antagonizing antics toward Plaintiff. The complaint is devoid, however, of any factual allegations indicating Ms. Clack's hostility toward Plaintiff was based on Plaintiff's race.[6]  Again, the conclusory assertions noted above are simply not sufficient to establish such a connection, even at the motion-to-dismiss stage.  *See Moya, supra.*

The one specific factual allegation against Defendant Green that is connected to race discrimination is the allegation that he did not respond adequately when Plaintiff received the hateful, racist note in her mailbox in late May of 2005.  Again, however, one instance of failure to take action to rectify a harassing incident is not sufficient to rise to the level of an adverse employment action.  Therefore, this allegation does not state a § 1983 claim against Defendant Green.  Due to the absence of sufficiently specific factual allegations against Defendant Green, and the absence of allegations tying any of his actions or inactions to Plaintiff's race, the § 1983 claim against Defendant Green will be dismissed.  Furthermore, since this claim will be dismissed against all three remaining individual Defendants, the claim will also be dismissed with respect to Hobbs Municipal Schools.  *See   Trigalet, supra,* 239 F.3d at 1154-56 (§ 1983 requires a predicate constitutional violation by an individual defendant to support municipal liability).

---

[6]It must also be again noted that Plaintiff dismissed Ms. Clack as a Defendant; a supervisor's "mere knowledge of a subordinate's discriminatory purpose" is insufficient to state a claim for a constitutional violation against the supervisor.  *Iqbal, supra* at 1949.

### B. Title VII Claims

**Exhaustion of Remedies:** Defendants contend Plaintiff has not adequately exhausted her administrative remedies with respect to many of the incidents about which she complains. They maintain that in some instances she failed to timely file a complaint with the E.E.O.C. or its state counterpart, the HRD, and that in others she has filed such a complaint but has not yet received a right-to-sue letter. The Court finds it unnecessary to try to determine which specific incidents have adequately been raised and exhausted during the administrative process, because none of the individual incidents, standing alone, amounts to an adverse employment action for purposes of Title VII. Therefore, none of the incidents individually could give rise to relief under Title VII in any event, whether or not they were properly "exhausted" before the E.E.O.C. or its state counterpart.[7] It is clear, however, that Plaintiff has exhausted her remedies as to her claim that she was subjected to a hostile work environment on the basis of her race. The documents provided to the Court by the parties establish that this claim was presented to the New Mexico Human Rights Division, that the term "hostile work environment" was specifically used in Plaintiff's submissions to that Division, and that Plaintiff received a right-to-sue letter regarding that claim. [Exhibits to Docs. 48, 51] In addition, insofar as the specific incidents alleged in the complaint can be viewed as part of the same hostile-work-environment claim, they can be considered by the Court whether they occurred outside the limitations period for the claim that was filed in April 2006, or after the filing of that claim. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) (as long as an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered for the purposes of determining liability; subsequent events may be part of the claim).

---

[7]The one incident that comes closest is Plaintiff's allegation that she was wrongly placed on a performance improvement plan. However, the Tenth Circuit has specifically determined that placement on such a plan does not constitute an adverse employment action. *See Haynes v. Level 3*, *supra*, 456 F.3d at 1224.

In sum, the hostile-work-environment analysis will take into account the specific incidents alleged by Plaintiff, whether they occurred in 2005 or at any time up until this lawsuit was filed.[8]

In reviewing Plaintiff's hostile-work-environment claim, it is important to keep in mind that in order to be actionable under Title VII, the harassment allegedly inflicted on Plaintiff must have been motivated by racial bias or enmity, not simply the result of personality conflicts.  *See  Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994)*; Bradley v. Widnall*, 232 F.3d 626, 632 (8th Cir. 2000).  Discourtesy or rudeness, or even a lack of racial sensitivity, does not amount to racial harassment.  *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998); *see also Dick v. Phone Directories Co., Inc.*, 397 F.3d 1256, 1263 (10th Cir. 2005) (Title VII is not a general civility code for American workplaces; if unpleasant nature of plaintiff's work environment is not due to gender, sex discrimination claim brought under Title VII is not meritorious).  In addition, to adequately allege a hostile work environment based on race, it is not sufficient to allege a few isolated incidents of racial enmity, or sporadic racial slurs.  Instead, there must be a steady barrage of opprobrious racial comments.  *See Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 680 (10th Cir. 2007); *Witt v. Roadway Express*, 136 F.3d 1424, 1432 (10th Cir. 1998);  *Bolden*, 43 F.3d at 550.

The central problem with regard to Plaintiff's hostile-work-environment claim as presented in her amended complaint is that, ignoring Plaintiff's conclusory characterizations,  only one of the

---

[8]It should be noted, however, that the analysis will not include the portions of the complaint designated as background evidence and detailing Plaintiff's decade-long series of discrimination claims against her employer.  The complaint explicitly separates these prior occurrences from the current hostile work environment, which the complaint denominates as evidence of discrimination that relates back to the charge of discrimination giving rise to this lawsuit, the 2006 administrative charge.  Furthermore, although under *Morgan* acts that occurred outside the limitations period can be considered for hostile-work-environment purposes, those acts must be part of the same hostile work environment.  *See Duncan v. Manager, Dept. of Safety, City and County of Denver,* 397 F.3d 1300, 1309 (10th Cir. 2005) (under *Morgan*, a series of alleged events comprises the same hostile environment where the incidents involve the same type of employment actions, occur relatively frequently, and were perpetrated by the same managers).  The background evidence cited in the complaint does not satisfy this standard.

10

incidents about which she complains can be directly attributed to race.  That incident, of course, is the note placed in her school mailbox containing perhaps the worst racial slur that can be directed at a black person, and impliedly tying Plaintiff's son's peanut allergy to the slur.  After recounting this incident, the complaint then proceeds to attribute a racially discriminatory motive to every act by school personnel that has anything to do with peanuts, even though no author of the note was identified and no other incident involved any implicit or explicit message connecting nuts with any kind of racial bias.  For example, the complaint charges that the school allowed peanut candies to be placed in the "school lounge" vending machines, and construes this as an act of harassment based on Plaintiff's race.  No reasonable employee, however, could so interpret this action.  Plaintiff cannot seriously contend that the school's failure to remove all vestiges of peanut products from its premises was, first of all, directed at her personally, and second of all, based on racial bias.[9]

Plaintiff's other "peanut-product" allegations all have similar shortcomings.  In December 2005, Plaintiff's son's teacher allegedly "held a school classroom project with peanuts" and sent each student home with peanut candies.  Assuming the teacher knew about the son's peanut allergy, these actions were certainly insensitive.  However, they cannot be tied to Plaintiff's race, in the absence of an allegation that the teacher was the person who placed the racist note in Plaintiff's mailbox.  In fact, the complaint does not allege that the teacher even knew about the racist note and its connection to peanuts; without such an allegation there is simply no way to even tangentially connect the teacher's actions with Plaintiff's race.

Similarly, in April 2006, a day or two after the school allegedly informed the "school community members" of the severity of Plaintiff's son's peanut allergy, an unknown person

---

[9]The result might be different if the complaint could identify who made the decision to put the peanut candies in the machine, and could truthfully allege that the same person placed the racist note in her school mailbox.  Absent such a connection, however, the availability of peanut candies in the vending machine cannot be reasonably construed as an act of racial harassment. *See Howard v. Bd. of Educ. of Memphis Schs.*, 70 Fed.Appx. 272, 282 (6th Cir. 2003) (courts must "distinguish between harassment and harassment that is based on a plaintiff's protected status.").

scattered wrappers of peanut products on a filing cabinet in Plaintiff's classroom.  This can certainly be construed as an act of harassment directed at Plaintiff; however, there is no reasonable way to construe it as an act of race-based harassment.  The racist note was placed in Plaintiff's mailbox almost a year before this incident, and Plaintiff unfortunately cannot allege who was responsible for either event.  No racist notes or drawings accompanied the wrappers.  Despite Plaintiff's argument to the contrary, therefore, no racist sentiment can be inferred from the placement of the wrappers in Plaintiff's classroom.[10]

The same is true of Plaintiff's allegation that in December 2007 she was given a Christmas card that said "We are nuts about you."  There is no allegation as to who was responsible for the card, so there is no way to tie the card to any racist sentiments.[11]  Again, if there was any way of determining from the complaint that the person who put this particular card in Plaintiff's box knew of her history with peanuts and racism, the act of giving the card could be considered an act of harassment based on race.  The complaint, however, is devoid of any allegation that would allow such an inference.

Another incident Plaintiff considers to be part of her hostile work environment is an incident that occurred in November 2007, when an unidentified person or persons smeared peanut butter on the door of her home.  There is no allegation that school personnel or anyone associated with the

---

[10]It is worth noting that the nature of the harassment must be determined from the viewpoint of a reasonable school employee, rather than solely from Plaintiff's subjective beliefs.  *See Harris v. Forklift Sys., Inc*., 510 U.S. 17, 21 (1993) (environment must be severe or pervasive enough to create an objectively hostile or abusive work environment-an environment that a reasonable person would find hostile or abusive-to be actionable under Title VII).

[11]Defendants did submit evidence indicating the card was placed in Plaintiff's box by a parent-teacher organization and not a school employee.  As discussed above, however, the Court cannot consider this evidence in deciding the motion to dismiss.  The Court is left, therefore, with the complaint's allegation that the Christmas card came from "the school."  This is patently insufficient to identify which school employee was in charge of picking that particular card for Plaintiff.

school was responsible for this incident, and it obviously did not occur on school premises. The incident cannot, therefore, be considered as part of Plaintiff's work environment at all.[12] Furthermore, even if it could be so considered, there is no allegation that could connect this incident to racial bias. Peanuts or peanut butter, standing alone, are not racially offensive symbols. If the complaint could somehow connect this subsequent peanut-related incident to the original racist note, the subsequent incident could be imbued with the same racist sentiments as the original note, since it is obviously an act of harassment directed at either Plaintiff or her son. As is noted throughout this opinion, however, such a connection cannot be made because no facts can be alleged regarding the identity or identities of the perpetrators of either the original note or this subsequent peanut-butter-related act.

In addition to the peanut-related incidents alleged in the complaint, Plaintiff presents allegations concerning Defendants' failure to adequately discipline and control Ms. Clack and a woman named Ms. Thompson. As discussed above, however, there are no factual allegations in the complaint that can establish a racial motive for Ms. Clack's and Ms. Thompson's harassment of Plaintiff. The complaint's conclusory characterizations of Ms. Clack and Ms. Thompson as having "deep rooted racial animus" and as "clearly possess[ing] racial sentiments toward Plaintiff" are simply not sufficient. *See Ashcroft v. Iqbal, supra,* 129 S.Ct. at 1951. Aside from these conclusory allegations, the facts alleged in the complaint contain no indication of a racial motive for these women's actions. Assuming the allegations in the complaint are true, Ms. Clack, in particular, certainly appears to have harbored a substantial amount of animosity toward Plaintiff. However, threatening to fight Plaintiff in the hallway, cursing about her in the school office, and intruding on

---

[12]The Court assumes, without deciding, that if it could be shown a school employee perpetrated the peanut-butter incident, the incident could be considered work-related even though it did not happen on school premises. *Cf. Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986 (10th Cir. 1996) (malicious prosecution of employee could be adverse employment action even though not directly related to plaintiff's employment, because it could affect present or future employment opportunities). No such allegation can be made in this case, however.

Plaintiff's personal space in a threatening manner are not acts of racial bias or prejudice, in the absence of any type of accompanying race-based language. If this sort of behavior occurred frequently, these allegations appear to be sufficient to constitute a hostile work environment. They are not, however, sufficient to state a claim that the hostile work environment was based on Plaintiff's race, rather than other factors such as simple personal animosity.

Another type of allegation contained in the complaint consists of quotations from charges of discrimination filed against the school by two other minority employees, identified in the amended complaint as an African-American male and a Mexican-American woman. Generally, acts of discrimination against other employees are not relevant to a plaintiff's hostile-work-environment claim unless a connection can be shown between those acts and the plaintiff's work environment. *See, e.g., Williams v. W.D. Sports, N.M., Inc*., 497 F.3d 1079, 1095 (10th Cir. 2007)(harassment of other employees, of which the plaintiff was unaware, cannot contribute to her hostile-work-environment claim). There are no allegations that Plaintiff was aware of the acts of harassment alleged in the other employees' charges, or that those acts were committed by the same person or persons responsible for the alleged race-based hostile work environment Plaintiff claims to have endured.[13] For this reason, the charges do not add to Plaintiff's claim.

The final type of harassment alleged by Plaintiff concerns her work performance. She alleges she received unwarranted negative evaluations, was micro-managed at work, and was placed on a performance improvement plan. The complaint does not allege who was responsible for these actions, and contains no facts that could tie them to any sort of racial bias or retaliatory intent. A complaint cannot simply allege that an entire workplace is permeated with racism and retaliation

---

[13]For example, one of the other employees charged that when she first started working at the school she was instructed not to associate with Plaintiff, due to Plaintiff's race. There is no indication who "instructed" the other employee in this way. Furthermore, since the instruction occurred in the fall of 2003, when the other employee began working at the school, it is not part of the same allegedly hostile work environment that is the subject of this lawsuit.

and then claim that every action by a supervisor that makes the plaintiff unhappy is an act of race-based harassment or retaliation.  *See Bolden, supra*, 43 F.3d at 551.  Instead, it must allege facts, not supposition or conjecture, that would support such a finding.

In sum, the complaint makes it apparent that Plaintiff has had continuing difficulty with virtually every principal or other supervisory personnel she has dealt with during her decade-and-a-half employment with Defendant Hobbs Municipal Schools.  It is also apparent that during the time period involved in this lawsuit, Plaintiff was subjected to only one overt act of racist harassment, the infamous note that was placed in her school mailbox.  Unless the perpetrator of that act can be identified, however, and tied to subsequent peanut-related incidents, those subsequent incidents cannot be attributed to race-based bias.  Similarly, acts of personal hostility toward Plaintiff by parents or others cannot be attributed to Plaintiff's race without some factual basis for doing so.  Finally, acts by supervisors such as handing out negative evaluations or placing Plaintiff on a performance improvement plan cannot be inferred to be acts of harassment or retaliation in the absence of factual allegations that would provide such a link.  Since the complaint does not provide the necessary links, Plaintiff's Title VII claim will be dismissed.

### C. Breach of Contract/Covenant of Good Faith and Fair Dealing

Plaintiff brings state-law claims for breach of contract and breach of the covenant of good faith and fair dealing, both of which are based essentially on the same allegations that underlie her § 1983 claims.  The Court construes Plaintiff's amended complaint to allege, in essence, two general categories of contractual rights that have been breached.  First, there are rights that allegedly arise out of Defendant Hobbs School's employment policies and procedures, such as the right not to be discriminated against and the right to have any type of racial harassment be adequately remedied.  Second, there are promises made to Plaintiff by Defendant Hobbs School that are specific to Plaintiff, such as a promise to accommodate her son's peanut allergy and to "provide Plaintiff with security cameras."  The Court addresses each of these categories separately.

Regarding the promises allegedly made directly to Plaintiff during the course of her employment, there are several reasons these promises fail to state a viable claim for relief.  First, there is no indication in the complaint that these promises were made in writing.  In New Mexico, governmental entities are immune from suit on a contract unless the contract is a written instrument.  NMSA § 37-1-23 (granting governmental entities immunity from actions based on contract, except for actions based on a valid written contract).  Second, these promises were not made as part of the normal process of entering into teaching contracts, but were essentially side agreements (if "agreements" at all) between the School and Plaintiff.  Plaintiff has not, however, alleged that she provided additional consideration to the School for these extra promises.  It is black-letter law that a valid contract must be supported by valuable consideration, the existence of which has not been alleged in the amended complaint.  *Nakashima v. State Farm Mut. Auto. Ins. Co.*, 153 P.3d 664, 668 (N.M. App. 2007).  Finally, the promises upon which Plaintiff relies are quite different from the usual terms and conditions of a teacher's employment contract such as salary and term of employment.  New Mexico's appellate courts have expressed a strong preference for limiting breach-of-employment-contract cases to situations in which a party has been denied some type of concrete benefit provided by the employment contract.  In other words, where an employee has not been discharged, or demoted, or suffered a reduction in pay, or incurred the loss of some other type of tangible benefit, an action for breach of contract or breach of the covenant of good faith and fair dealing will not lie.  *See Henning v. Rounds*, 171 P.3d 317, 323 (N.M. App. 2007) ("it is unclear what benefit Plaintiff was denied under her employment contract" where she did not suffer any of the consequences listed above; merely receiving unjustified negative evaluations did not deny the

16

plaintiff any actual contractual benefit).  For all of these reasons, Plaintiff's contractual claims[14] based on "promises" made by her employer do not state a valid claim and must be dismissed.

As noted above, Plaintiff's other contractual claims appear to be based on her allegations that the School discriminated against her on the basis of her race and failed to respond adequately to discriminatory harassment she was suffering on the basis of her race.  Plaintiff alleges that her contractual rights to be free from discrimination and to have the School respond in an adequate manner arise out of the policies and procedures of the School, which presumably forbid discrimination and assure equal treatment of all employees.[15]  The problem with these breach-of-contract claims is that, except in quite limited circumstances, anti-discrimination or equal-treatment clauses in an employer's policies-and-procedures manual do not give rise to contractual rights.  *See, e.g., Stieber v. Journal Pub. Co.*, 901 P.2d 201, 205 (N.M. App.1995) (general policy language in employer's handbook to the effect that the defendant was an equal opportunity employer was simply a general policy statement of a non-promissory nature, and insufficient to create a binding contractual obligation not to discriminate against the plaintiff); *see also Ruegsegger v. Western N.M. Univ. Bd. of Regents*, 154 P.3d 681, 688 (N.M. App. 2006) (university's handbook provisions did not contractually guarantee a right to specific type of response to an allegation of sexual assault; instead, they provided guidelines for the operation of the university, and for that reason did not constitute the terms of an implied contract); *cf. Sanchez v. The New Mexican*, 106 N.M. 76, 79, 738 P.2d 1321, 1324 (1987) (language in handbook lacked specific contractual terms and was merely

---

[14]In New Mexico, a claim for breach of the covenant of good faith and fair dealing is simply another type of breach-of-contract claim.  *See Bourgeous v. Horizon Healthcare Corp.*, 872 P.2d 852, 857 (N.M. 1994) (in some jurisdictions, tort remedy exists for breach of covenant of good faith and fair dealing; however, in New Mexico that is not the case and damages for breach of the covenant would duplicate damages for breach of contract in an employment case).

[15]The amended complaint does not provide the exact language in the policies upon which Plaintiff relies, but the Court is familiar with the standard equal-opportunity-employer language contained in employment contracts.

a declaration of the employer's general approach to a subject; therefore, no implied contract was created by the language).  In the absence of any allegation of specific language in the policies and procedures manual that might create a specific contractual right of some type, the Court finds that general policies outlawing discrimination or assuring equal opportunity under the laws did not provide Plaintiff any contractual right to be free from discrimination, or to have the School respond in a certain manner to any harassment that occurred.[16]

### D. Intentional Infliction of Emotional Distress

Plaintiff has brought a cause of action alleging Defendants committed the tort of intentional infliction of emotional distress ("IIED").  As Plaintiff acknowledged in her response brief, however, the New Mexico Tort Claims Act does not waive immunity for this tort.  In an effort to get around this problem, Plaintiff argues that she may pursue this claim to the extent that the individual Defendants were not acting in the course and scope of their duties when they committed the tort. Examination of the complaint, however, reveals that the only allegations tied to the three remaining individual Defendants concern actions they took in the course and scope of their duties.  These actions, as discussed above, consisted mainly of failing to respond adequately to harassment incidents alleged by Plaintiff, or of failing to adequately comply with Plaintiff's son's need to avoid contact with peanuts.  It is true that as for the most egregious incidents, such as the racist note and the spreading of peanut butter on Plaintiff's home, whoever committed them could not have been acting in the course and scope of any employment.  However, Plaintiff cannot allege the identity or identities of the perpetrator, so no Defendant can be held responsible for these actions.  The Court therefore finds that any actions alleged in the amended complaint that were committed by a named

---

[16]Should Plaintiff not in fact be relying on general policy statements, but be able to point to specific terms of her employment contract that support these claims, she may supply the Court with a motion for reconsideration and a copy of the policies and procedures sections that she believes provide such support.  The Court will then re-examine these claims in light of any specific language upon which Plaintiff relies.

Defendant were within the scope of employment of that Defendant.  Therefore, immunity has not been waived for those acts and the IIED claim must be dismissed.

**Conclusion**

At the hearing held on the original motion to dismiss, the Court noted the concern that the original complaint was too vague and insufficiently identified what specific Defendant had committed what specific act against Plaintiff.  The amended complaint has failed to rectify this deficiency.  In addition, the amended complaint alleges only one factual incident, as opposed to conclusory allegations, that is based on race.  As discussed above, the amended complaint fails to state a viable claim against any Defendant, and must therefore be dismissed.  This case will accordingly be dismissed without prejudice.

Dated this 8th day of September, 2009.


_____
BRUCE D. BLACK
United States District Judge